UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAMSONITE INDUSTRIES, INC., § <br> d/b/a Metro EMS, § <br> § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> ALEX M. AZAR II, § <br> SECRETARY, UNITED STATES § <br> DEPARTMENT OF HEALTH § <br> AND HUMAN SERVICES, § <br> § <br> Defendant. § | CIVIL ACTION NO. 4:19-cv-742 |

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISSOLVE PRELIMINARY INJUNCTION**

Plaintiff's Complaint establishes it is in precisely the same procedural posture, and raises the same procedural due process issues, as adjudicated in *Sahara Health Care, Inc. v. Azar*, *et al.,* 975 F.3d 523 (5th Cir. 2020). Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on February 7, 2019, and like the plaintiff in *Sahara*, it asserts that "Defendant's failure to make available an ALJ hearing within ninety (90) days while imposing recoupment violates statutory and constitutionally required procedures." (Doc #1 at ¶23). Based on Fifth Circuit's opinion in *Sahara*, finding against a Medicare provider under the same circumstances, Plaintiff does not have a substantial likelihood of success on the merits of its Complaint and the injunction should be dissolved.

**1.      Supplemental Facts Regarding the Adequacy of Plaintiff's Reconsideration**

On May 13, 2018, the Plaintiff filed suit asserting that the Secretary violated Plaintiff's due process rights by not providing any administrative process prior to sending its overpayment determination to the Department of Treasury for collection. *Samsonite v Azar*, No. 18-cv-1789,

(S.D. Tex dismissed Feb. 27, 2019)(*Samsonite I*). Plaintiff alleged it timely mailed a request for redetermination for both of the alleged Medicare overpayment determinations on August 4, 2011, but never received a Redetermination decision adjudicating its request. *Samsonite I* (Doc #1 at 11). After that lawsuit was filed, the Centers for Medicare and Medicaid Services (CMS), and its contractors reviewed their files to determine if Plaintiff received the requisite appeal rights and whether the collection action was appropriate.

CMS and it contractors determined that a first level appeal had been completed and TrailBlazer Health Enterprises LLC (TrailBlazer), the previous Medicare Administrative Contractor (MAC), issued a partially favorable Redetermination Decision on April 23, 2012. (Doc #7-1) Plaintiff learned about Redetermination once Trailblazer tried to collect the overpayment. On November 9, 2012, Plaintiff sent a package to "Trailblazer Health Enterprises, LLC - 935 Appeals Reconcideration [sic]" with enclosures, including the original overpayment notice, medical records, and beneficiary listing. *Samsonite I* (Doc# 14-5). The subject line of one of the letters is "Reconcideration [sic] Request to Be Open." Samsonite I (Doc# 14-5). Trailblazer processed the package as a request for reconsideration and forwarded it to Q2A, the former QIC. On December 4, 2012, Q2A sent an acknowledgement of the reconsideration request to Metro. *Samsonite I* (Doc# 14-6). On December 20, 2012, Q2A dismissed the reconsideration because it believed Plaintiff had not received a redetermination. Samsonite I (Doc# 14-7).

After reviewing the documents, C2C Innovative Solutions Inc. (C2C), the Qualified Independent Contractor (QIC) charged with conducting reconsideration (second level appeals), found that Q2A erroneously dismissed Plaintiff's reconsideration request (Doc #7-1). On July 10, 2018, C2C notified Plaintiff it was reopening the dismissed request for reconsideration. (Doc

#7-1). C2C subsequently provided Plaintiff with the entire appeal file and afforded Plaintiff the opportunity to submit additional evidence and argument.

On December 18, 2018, C2C issued a 51 page reconsideration decision. (Doc# 7-1). On December 20, 2018, the Secretary filed a status report in *Samsonite I* with District Court Judge Gary Miller and reported that:

> On October 23, 2018, C2C received additional documents from Novitas and forwarded those document to Samsonite (HHS Ex. 2). HHS considers its production of the appeal file to Samsonite complete. C2C's letter also informed Samsonite that it would look at Samsonite's appeal carefully and consider all evidence in the file (HHS Ex. 2). C2C asked Samsonite to submit any additional information it wished to have considered in its appeal as soon as possible (HHS Ex. 2). This week, C2C informed counsel that Samsonite had not submitted additional documents or requested more time to do so.

*Samsonite I* (Doc #20). On February 7, 2019, Plaintiff submitted a request for an ALJ hearing. (Doc #1 at 8, ¶20). On February 26, 2019, it filed a voluntary notice of dismissal in *Samsonite I*. On March 1, 2019, Plaintiff filed the present case (*Samsonite II)* alleging it due process right were violated by "Defendant's failure to make available an ALJ hearing within ninety (90) days while imposing recoupment violates statutory and constitutionally required procedures." (Doc #1 at ¶23).

## 2. Plaintiff has Received Two Meaningful Opportunities to Challenge the Overpayment Determination

The Due Process Clause does not guarantee an evidentiary hearing, it only guarantees the baseline amount of process sufficient to ensure that a proceeding is fair. Due process guarantees that "notice and opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.,* 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). There is no dispute that Plaintiff received ample notice of Defendants' overpayment determination and intent to recoup the identified overpayment. (*See,*

*e.g.*, Doc. 28-1, Ex. A (initial demand letter to Plaintiff); Ex. B (demand letter sent after second level of review); *see also* 42 C.F.R. §§ 405.373(a), 405.374 (regulations providing that providers are to receive notice prior to recoupment). The only question, then, is whether Plaintiff received a constitutionally adequate opportunity to be heard.

In *Sahara*, the Fifth Circuit held that the first two levels of the administrative process provide a constitutionally adequate opportunity to be heard before recoupment begins. *See Sahara*, 975 F.3d 533. The court found that the redetermination (where Sahara "could submit a written statement and additional evidence") and the reconsideration (where Sahara had the opportunity to provide additional evidence and written arguments of fact and law) reviews provided Sahara with adequate process. *Id.* at 530-31. As a result, the court denied Sahara's request to stop recoupment until it receives and ALJ hearing, finding that "the adequate process that Sahara has received and the procedural protections it has chosen to forego weigh strongly, and decisively, against it."

Plaintiff, just like Sahara, received adequate process and chose to forgo procedural protections. Plaintiff admits that Defendant provided two levels of administrative review before he began to recoup the overpayment amount. Doc. #1, ¶¶11, 19-20; see S*ahara*, 975 F.3d 531. At both levels, the Secretary's contractors provided Plaintiff with the opportunity to submit arguments and evidence to show that the claims that met Medicare requirements. While Plaintiff submitted a written statement with additional evidence at redetermination, it chose not to submit additional evidence or arguments at reconsideration.[1] And while Plaintiff argues that it has not received a timely ALJ hearing, like Sahara, it has chosen not to escalate its appeal to Medicare

---

[1] After Plaintiff filed *Samsonite I,* the Secretary cured the appeal processing issue by providing Plaintiff with the complete redetermination file, reopening Plaintiff's dismissed reconsideration, and granting Plaintiff a full opportunity to respond. (Doc# 7-1). Plaintiff chose not to submit documentation.

4

Appeals Council.

Plaintiff seeks to distinguish *Sahara* by claiming it was "truly been deprived of an adequate administrative process at the first two levels of a five-stage administrative appeal." Pl's Res. at 3-4. However, Plaintiff's election not to present evidence and argument at the reconsideration level does not entitle it to protections greater that other providers awaiting an ALJ hearing. Even after receiving the complete 2000 page administrative record (including all statistical sampling data) and an express opportunity to respond, Plaintiff chose not to submit any new documents, expert reports, or briefs to the C2C for a *de novo* review. *Samsonite I* (Doc #20)

Plaintiff argues it wants to present testimony on statistical sampling at an ALJ hearing, but no expert report was filed at the reconsideration level to lay the foundation for such testimony. Pl's Res. at 4-5. In *Sahara*, the Fifth Circuit analyzed ALJ hearings, and stated the following:

> The step-three hearing does not allow a provider to supplement the record and does not ensure that any government witnesses will be available. That means that "the very procedural safeguards that [Sahara] argues are critical are far from assured even at the ALJ hearing level. *Accident, Injury & Rehab.*, 943 F.3d at 204 (holding that the Medicare recoupment escalation procedure provided due proves where the step-three ALJ hearing was functionally unavailable.)

*Sahara*, 975 f.3d at 532. The statute prevents Plaintiff from further developing the record absent good cause. See *id*.; see 42 U.S.C. § 1395ff(b)(3). Given that Plaintiff essentially boycotted the reconsideration process, it may have a difficult time establishing good cause for its failure to submit evidence challenging statistical sampling, and other issues, at the reconsideration level. Due process guarantees that "notice and opportunity to be heard be granted at a meaningful time and in a meaningful manner." Plaintiff cannot complain the reconsideration was lacking due process, when declining the *opportunity to be heard* in the reconsideration process was its own choice. Cf. *Sahara*, 975 F.3d at 533.

**3.     A Published Case is Precedential Prior to the Issuance of a Mandate**

Plaintiff's claim that Sahara is was not controlling precedent until a mandate issues rings hollow; published appellate decisions are controlling law and effective upon issuance. *Zermeno-Gomez v. U.S. Dist. Ct. for Dist. of Ariz.*, 868 F.3d 1048, 1052 (9th Cir. 2017); *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983); see also *Glob. Naps, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 19 (1st Cir. 2007); *Martin v Singletary*, 965 F.2d 944, 945 n. 1 (11th Cir 1992)("Although the mandate in *Johnson* has not yet issued, it is nonetheless the law in this circuit. A mandate is the official means of communicating our judgment to the district court and of returning jurisdiction in a case to the district court. The stay of the mandate in *Johnson* merely delays the return of jurisdiction to the district court to carry out our judgment in that case.")

**Conclusion**

This case is controlled by *Sahara*, thus Plaintiff no longer has substantial likelihood of success on the merits of its remaining due process claims.  For the reasons identified in the Fifth Circuit's decision, and the other reasons identified in Defendant's briefing, the Court should dissolve the preliminary injunction.

          Respectfully submitted,

          RYAN K. PATRICK
          UNITED STATES ATTORNEY

BY:     */s/ Jose Vela Jr.*
       Jose Vela Jr.
       Assistant United States Attorney
       Attorney in Charge
       Fed ID# 25492
       Texas State Bar No. 24040072
       1000 Louisiana Street, Suite 2300
       Houston, Texas 77002
       (713) 567-9000
       Fax: (713) 718-3300
       jose.vela@usdoj.gov

                              ATTORNEY FOR THE DEFENDANT

OF COUNSEL:

Robert P. Charrow
General Counsel

Mervin Turner
Chief Counsel, Region VI

Daniel Wolfe
Neel Gandhi
Dante Anderson
Assistant Regional Counsels
United States Department of Health and Human Services
Office of the General Counsel
1301 Young Street, Suite 1138
Dallas, Texas 75202

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the *Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dissolve Preliminary Injunction* was sent via first class mail or electronic mail (ECF) on October 26, 2020, to:

Mark Stephen Kennedy
KENNEDY
Attorneys & Counselors at Law
12222 Merit Drive, Suite 17500
Dallas, TX 75251
214.445.0740
markskennedylaw@msn.com

Attorney for the Plaintiff

                                          /s/ *Jose Vela Jr.*
                                          Assistant United States Attorney