United States District Court
Southern District of Texas
**ENTERED**

August 19, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

SAMSONITE INDUSTRIES, INC.,    §
D/B/A METRO EMS    §
   §
   Plaintiff,    §
   §
V.    §    CIVIL ACTION NO. 4:19-CV-742
   §
ALEX M. AZAR II, Secretary, UNITED    §
STATES DEPARTMENT OF HEALTH    §
AND HUMAN SERVICES,    §
   §
   Defendant.    §

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge is Defendant's Motion for Summary Judgment (Document No. 38) and Plaintiff's Cross Motion for Summary Judgment (Document No. 43). After reviewing the parties' submissions, the parties' responses, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 43) be GRANTED, and that Plaintiff's Motion for Summary Judgment (Document No. 38), be DENIED.

## I. Introduction

This suit, in which injunctive relief and attorneys fees are sought, was brought by Plaintiff, Samsonite Industries, Inc. d/b/a Metro EMS ("Metro"), against Defendant, Alex M. Azar II, Secretary, United States Department of Health and Human Services ("Secretary"), to enjoin the Secretary from recouping approximately $1 million in calculated overpayments prior to the completion of the four-step administrative appeals process. Metro maintains that it should not have

1

to repay the Secretary until the entire administrative appeals process is complete and that requiring it to repay the Secretary now will render it insolvent and force it into bankruptcy. In an Order entered on July 3, 2019, the Court granted Metro's request for a Temporary Restraining Order (Document No. 19).  In a subsequent Order, the Court converted the Temporary Restraining Order into a Preliminary Injunction (Document No. 31). In granting Metro injunctive relief, the Court wrote:

> Plaintiff was entitled to a[n] [ALJ] decision within 90 days, by May 7, 2019, and has not received a hearing. Plaintiff anticipates that obtaining a hearing will take at least three to five years—a timeline for obtaining a hearing that the Fifth Circuit found HHS "effectively conceded." *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018). There is a high risk that Plaintiff will be deprived of its property interest without receiving statutorily required procedural protections. Accordingly, Plaintiff has demonstrated a substantial likelihood of success on the merits of its procedural due process claim.

(Document No. 19 at 3).

Nine months after the Court's issuance of a Preliminary Injunction, Defendant filed a Motion to Dissolve the Preliminary Injunction (Document No. 35) and a Motion for Summary Judgment (Document No. 38). Both motions are premised on a recent decision of the Fifth Circuit Court of Appeals in *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523 (5th Cir. 2020). Metro, in its own Motion for Summary Judgment (Document No. 43) argues that its facts differ significantly from those of the provider in *Sahara* due to the alleged denial of due process at the previous appeals levels.

## II.    Administrative Review of Medicare Proceedings

The Medicare program pays facially valid claims and conducts post-payment audits to detect overpayments. 42 U.S.C.S. § 1395ddd. Providers who wish to challenge an overpayment determination have access to four phases of administrative review. 42 U.S.C.S. § 1395ff. The first phase of administrative review is a redetermination by an individual at the MAC who was not

involved in making the initial determination. U.S.C.S. § 1395ff(a)(3); 42 C.F.R. § 405.948. At the second level, a provider can seek reconsideration from a QIC. 42 U.S.C.S. § 1395ff(b)—(c), (g); 42 C.F.R. §§ 405.902, 405.904(a)(2). The QIC issues reconsideration decisions within 60 days of a timely request. U.S.C.S. § 1395ff(c)(3)(C)(i). If the QIC fails to issue a decision within this period, the provider may bypass this level and escalate the appeal to the third level of review. U.S.C.S. § 1395ff(c)(3)(C)(ii); 42 C.F.R. § 405.946.

At steps one and two, the provider must explain why it disagrees with the initial determination and may submit any additional evidence it deems relevant. 42 C.F.R. §§ 405.946(a); 405.966(a). A provider may not introduce evidence after step two unless there is good cause which precluded the introduction of such evidence at or before reconsideration. 42 U.S.C.S. § 1395ff(b)(3); 42 C.F.R. § 405.966(a)(2).

At the third level, a provider is entitled to a hearing and a decision from an ALJ, who must make a decision or remand the case within 90 days of the timely review request. 42 U.S.C.S. § 1395ff(d)(1)(A). In the case of a failure by an ALJ to render a decision by the end of the period, the provider may request review by the Departmental Appeals Board of the Department of Health and Human Services. 42 U.S.C.S. § 1395ff(d)(3)(A). At step four, the Appeals Board has 90 days to conduct a *de novo* review and issue a decision, or 180 days if the case was "escalated" to skip the step-three ALJ hearing. 42 U.S.C.S. § 1395ff(d)(2)(A); 42 C.F.R. §§ 405.1100(c) (de novo review); 405.1100(d) (180 days if escalated). If the Board does not render a timely decision, the provider may escalate its appeal to federal court. 42 U.S.C.S. § 1395ff(d)(3)(B).

Recoupment is the recovery by Medicare of any debt "by reducing present or future Medicare payments and applying the amount withheld to the indebtedness." 42 C.F.R. § 405.370. The Secretary cannot recoup overpayments during the first two stages of administrative review. 42

3

U.S.C.S. § 1395ff(f)(2)(A). However, after those two appeals, the Secretary may initiate recoupment, and "if the provider or supplier subsequently appeals the overpayment to the ALJ . . . recoupment remains in effect[.]" 42 C.F.R. § 405.379(d)(4)-(5). The Secretary must give a provider notice and an opportunity to respond in writing. 42 C.F.R. §§ 405.373(a), (b)(1).

If repayment would constitute an extreme hardship, the statue allows the provider to enter into a plan for repayment over a period of at least 60 months but not longer than five years. 42 U.S.C.S. § 1395ddd(f)(1)(A). If the Secretary has reason to believe "that the provider of services or supplier may file for bankruptcy or otherwise cease to do business or discontinue participation in the [Medicare] program[,]" then the extended repayment plan is off the table. 42 U.S.C.S. § 1395ddd(f)(1)(C)(i). A provider that succeeds in overturning an overpayment determination after recoupment has been initiated receives the wrongfully recouped payments with interest. 42 U.S.C.S. § 1395ddd(f)(2)(B).

## III.   Underlying Administrative Process and Procedural History Herein

Metro is an ambulance supplier that delivers care almost exclusively to Medicare patients and derives 98% of its revenue from Medicare reimbursement payments. (Document No. 1). On May 25, 2011, TrailBlazer Health Enterprises, LLC, a Medicare Administrative Contractor, conducted an audit of Metro's Medicare claims. Following the audit, the Secretary notified Metro of a $1,147,488.00 overpayment. Plaintiff then began appealing the overpayment through the four-stage administrative process.

Metro submitted a claim for redetermination to the Medicare Administrative Contractors (individually, "MAC"). On April 23, 2012, the MAC issued a partially favorable redetermination decision in the amount of $1,081,296.00. Metro proceeded to the second step of the appeals process

4

by requesting review of the overpayment determination by a Qualified Independent Contractor ("QIC"). The QIC erroneously dismissed Plaintiff's reconsideration request. Only July 10, 2018, the QIC notified Metro that it was reopening the dismissed request for reconsideration. The QIC subsequently provided Metro with the entire appeal file and afforded Metro the opportunity to submit additional evidence and argument. The QIC issued its reconsideration decision on December 21, 2018, which resulted in a partially favorable reconsideration decision.

On January 11, 2019, Metro received a demand letter from the MAC seeking $1,040,405.00 in principal and $76,626.20 in interest. Advancing to the third stage, Metro filed its request for an Administrative Law Judge ("ALJ") hearing on February 7, 2019. Metro initiated suit against the Secretary on March 1, 2019, alleging procedural due process and *ultra vires* causes of action for "Defendant's failure to make available an ALJ hearing within ninety (90) days." (Document No. 1). Metro sought injunctive relief requiring the Secretary to suspend recoupment, return improperly recouped funds, and halt accrual of interest on the overpayments. (Document No. 1). On November 15, 2019, the Court issued a preliminary injunction that enjoined the Secretary from "withholding, recouping, offsetting, or otherwise failing to pay Plaintiff any current Medicare receivables." (Document No. 31).

On September 27, 2020, the Secretary filed a Motion to Dissolve the Preliminary Injunction due to the Fifth Circuit's Decision in *Sahara*. (Document No. 35). Metro filed its response on October 19, 2020. (Document No. 6). On December 9, 2020, the Secretary filed a Motion for Summary Judgment, arguing that, for the reasons established by the Fifth Circuit in *Sahara*, the Court should grant summary judgment in the Secretary's favor. (Document No. 38). Metro filed a response on January 8, 2021. (Document No. 41). On January 27, 2021, Metro filed its own Motion for Summary Judgment, arguing that it is intitled to injunctive relief due to the denial of due

process at the previous appeal stages. (Document No. 43). The Secretary filed a response on February 22, 2021. (Document No. 44). Finally, Metro filed a brief in support of its motion for summary judgment on March 1, 2021. (Document No. 45).

## IV.    Discussion

The Court's issuance of a preliminary injunction provided Metro with much of the relief it sought in this case. Couching its injunctive relief request as a remedy to a due process violation, Metro successfully argued that allowing the Secretary to seek recoupment prior to the completion of the administrative appeals process constituted a denial of due process. Metro maintains that the basis for the preliminary injunction remains. In contrast, the Secretary maintains that the *Sahara* decision essentially overrules Metro's due process claim and dictates that judgment be entered in its favor.

Administrative deprivations of property are governed by "[t]he familiar procedural due process inspection instructed by *Mathews v. Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)[.]" *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). The three *Matthews* factors are: (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest, and the probable value of additional or substitute procedural safeguards, and (3) the Government's interest. *Mathews*, 424 U.S. at 335.

A provider is not denied due process when it already had two meaningful opportunities to be heard during the administrative appeals process. In *Sahara*, the plaintiff was notified of a $3.5 million overpayment determination in 2017. *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 527 (5th Cir. 2020). It appealed, and at step one, the overpayment decision was partly upheld. *Id.* At step two, the plaintiff received a revised overpayment demand of $2.4 million. *Id.* Subsequently, the plaintiff timely requested an ALJ hearing. *Id.* The plaintiff was financially unable to accept a

five-year plan repayment schedule because it would have "had a devastating impact on the business' [sic] financial well-being." *Id.* at 528 (internal quotation marks omitted). The plaintiff sought injunctive relief, arguing its statutory and due process rights were violated and that the government acted *ultra vires* by recouping payments without providing a timely ALJ hearing. *Id.* at 525. The District Court granted the Government's motion to dismiss, holding that "the plaintiff lacked a protected property interest in forestalling the recoupment and that the government had provided adequate process." *Id.* It also concluded that "the government had not exceeded its statutory authority." *Id.* The plaintiff appealed. *Id.* at 528.

On appeal, the Fifth Circuit found, looking at the first and third *Mathews* factors, that the plaintiff's private interest in adding a hearing outweighed the government's interest in efficient recoupment administration. *Id.* at 529. Analyzing the second *Mathews* factor, the Fifth Circuit further concluded that "the sufficiency of the current procedures and the minimal benefit of the live hearing" weighed so strongly against the plaintiff that the court rejected its due process claim. *Id.* at 530. At a minimum, due process guarantees that "notice and an opportunity to be heard 'be granted at a meaningful time and in a meaningful manner.'" *Gibson v. Tex. Dep't of Ins. - Div. of Workers' Comp.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972)). The Fifth Circuit reasoned that the plaintiff already had two meaningful opportunities to be heard at steps one and two of the administrative appeals process. *Sahara*, 975 F.3d at 530. Additionally, the plaintiff did not explain why steps one and two failed to satisfy the constitutional requirement but rather dwelled on "the procedural additions of the step-three ALJ hearing." *Id.* at 531. The Fifth Circuit held that the procedure the plaintiff received was constitutionally adequate and affirmed the dismissal by the District Court. *Id.*

7

The factual scenario in *Sahara* is essentially the factual scenario here. Metro, like the plaintiff in *Sahara*, was not denied due process because it already had two meaningful opportunities to be heard during the administrative appeals process. In *Sahara*, the plaintiff was notified of an overpayment determination and subsequently began the administrative appeals process. After step two, the plaintiff timely requested an ALJ hearing. Similarly, Metro was notified of an overpayment determination, began the administrative appeals process, and timely requested an ALJ hearing. The plaintiff in *Sahara* sought injunctive relief, arguing its statutory and due process rights were violated and that the government acted *ultra vires* by recouping payments without providing a timely ALJ hearing. Likewise, Metro filed a Motion for Summary Judgment, requesting preliminary and permanent injunction due to procedural due process and *ultra vires* causes of action for the Secretary's failure to make available an ALJ hearing within 90 days. The Fifth Circuit found that the plaintiff in *Sahara* already had two meaningful opportunities to be heard at steps one and two of the administrative appeals process. Therefore, the procedure the plaintiff in *Sahara* received was found to be constitutionally adequate. Because Metro also received the same two levels of administrative review, Metro was not denied due process.

Metro argues that the facts presently before the Court are not like the facts in *Sahara*. (Document No. 45). Metro contends it has been "deprived of an adequate administrative process at the first two levels" because of the delay between the redetermination and reconsideration stages. (Document No. 45 at 3). Although there was a delay, Metro still had two meaningful opportunities to be heard. At step one, Metro submitted a written statement with additional evidence about patients' trip records. (Document No. 2). At step two, the QIC notified Metro it was reopening the dismissed request for reconsideration and sent a letter informing Metro to

8

submit any additional information. Metro had the opportunity to submit supporting documents and chose not to. Therefore, Metro was not deprived of an opportunity to submit additional evidence.

Metro attempts to distinguish itself from the plaintiff in S*ahara* by arguing the importance of live testimony. (Document No. 45) In *Sahara,* the Fifth Circuit noted that "the sufficiency of the current procedures and the minimal benefit of the live hearing weighs so strongly against Sahara that we reject its due process claim." *Sahara*, 975 F.3d at 530. Metro argues "witness and expert testimony is vital to its overall challenge to the overpayment," and that it will attempt to cross examine the Secretary. (Document No. 45 at 4). These arguments are of no avail.

In *Adams*, the plaintiff argued that its claims were different from those in *Sahara* because it sought to present live testimony to challenge the overpayment calculation. *Adams EMS, Inc. v. Azar*, No. H-18-1443, 2021 U.S. Dist. LEXIS 2216, at *5 (S.D. Tex. 2021) (Rosenthal, J.). The plaintiff presented some evidence about the value of a hearing, but the District Court found it had not demonstrated how the hearing before an ALJ would meaningfully differ from the review available in the escalation process. Through escalation, the plaintiff might be able to present live testimony to the Appeals Board, which may decide to conduct a hearing if necessary. *Id.* (citing 42 C.F.R. § 405.1108(d)). Additionally, the plaintiff in *Adams* did not argue that it can show good cause to present additional evidence at a live hearing. Metro is in the same position insofar as it is bound by the rule that it cannot develop the record further without good cause. The live testimony that Metro argues is "vital" is not guaranteed. "The step-three hearing does not allow a provider to supplement the record and does not ensure that any government witnesses will be available." *Sahara*, 975 F.3d at 532. The procedural safeguards that Metro argues are critical are not assured even at an ALJ hearing. *Id.*

In *Adams*, after reviewing the plaintiff's attempts to distinguish itself from *Sahara,* Judge Rosenthal held that, "[c]onsidering claims and facts similar to those before this court, the *Sahara Health* court found that the plaintiff received adequate process under the Constitution and the Medicare Act, and that the Department acted within its statutory authority. *Sahara Health*, 975 F.3d at 525. The same result applies here." *Adams*, 2021 U.S. Dist. LEXIS 2216, at *5. Based on *Sahara* and *Adams*, the only conclusion that can be reached is that Metro received adequate process and the Department acted within its statutory authority. Based on *Sahara* and *Adams*, Metro's due process claim fails as a matter of law.

In addition, Metro argues that Congress likely did not anticipate a delay of an ALJ hearing for much longer than 90 days. (Document No. 45 at 2). However, Congress has given providers a route to judicial review when there is a delay in the administrative process: escalation. 42 U.S.C.S. § 1395ff(d)(3)(A). Metro chose not to avail itself of that option. Congress is aware of the backlog of appeals and appropriated $182.3 million to address the backlog but did not limit the Secretary's ability to recoup overpayments. *Sahara*, 975 F.3d at 533 (citing *AHA v. Azar*, No. 14-cv-851, 2018 U.S. Dist. LEXIS 186853, 2018 WL 5723141, at *2 (D.D.C. Nov. 1, 2018)). As such, the anticipated length of delay in this case does not compel a conclusion different from that reached in *Sahara* and *Adams*.

## V.     Conclusion and Recommendation

Based on the foregoing, and the conclusion that Plaintiff's due process claim and its request for injunctive relief and attorneys fees fails as a matter of law based on the Fifth Circuit's decision in *Sahara*, the Magistrate Judge

RECOMMENDS that Defendant's Motion for Summary Judgment and Defendant's Motion to Dissolve Preliminary Injunction (Document Nos. 38 and 35, respectively) be GRANTED, and that that Plaintiffs Motion for Summary Judgment (Document No. 43) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b). Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), cert. denied, 461 U.S. 930, 103 S.Ct. 2092, 77 L.Ed.2d 302 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen days bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this _____ day of __August 19, 2021__, 2021.

*Frances H. Stacy*

_____
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE